## THE ROANOKE.

### UNION MARINE INS. CO. et al. v. THE ROANOKE.

#### (District Court, E. D. Wisconsin. December 12, 1892.)

1. SHIPPING—BILL OF LADING—CONSTRUCTION—EXEMPTIONS FROM LIABILITY—
GENERAL AVERAGE.

   A bill of lading which exempts the ship and owner from loss arising
   from any danger or accident incident "to navigation or transportation, re-
   ceipt, delivery, storage, or wharfage, any fire, collision, explosion of any
   kind, wetting, combustion, or heating," does not include an exemption
   from liability in general average. Exemption from the ordinary liabil-
   ities of a carrier should be expressed in clear and definite language.

2. SAME.

   A bill of lading which exempts the ship and owner from loss by "fire or
   wetting" does not include an exemption from liability to contribute in gen-
   eral average for loss of cargo by water poured thereon to extinguish a fire.

In Admiralty. Libel by the Union Marine Insurance Company
against the steamer Roanoke and others to recover in general aver-
age. Certain exceptions filed to the libel were heretofore over-
ruled. 46 Fed. Rep. 297. The cause was thereafter submitted upon
the agreed statement of facts. Decree for libelants.

John C. Richberg, for libelant.
George D. Van Dyke, for the Roanoke.

JENKINS, District Judge, (orally.) The libel was filed by certain
underwriters against the Roanoke, in a case of general average. The
cargo of the vessel having been found to be on fire, the fire department
of the city of Buffalo, where the vessel then lay, was called into requisi-
tion, and flooded the cargo, and by that means, and by the subse-
quent efforts of the master and crew of the vessel, the fire was ex-
tinguished, the vessel was saved, and a large part of the cargo was
saved at the expense of a certain part of the cargo, which was de-
stroyed by the wetting from the water. The libel was filed against
the vessel by the underwriters, who had paid the owners of the cargo
so destroyed, to recover in general average for the amount which the
vessel should contribute toward the common purpose of saving ship
and cargo. Exceptions were filed to the libel, and the question was
thereby raised whether a destruction of cargo by wetting was a sub-
ject of general average contribution; because, as it was said, there
was no selection for sacrifice, and also because by the act of congress
it was provided that ship owners should not be liable in case of loss
or damage by fire. Those exceptions were overruled by the court,
(46 Fed. Rep. 297,) and it was held that there need be no manual se-
lection; that the destruction of a part of the cargo, for the com-
mon purpose of saving the ship and cargo, was a subject of general
average; and that the act relieving common carriers from liability
from fire applies only to the general liability which would arise other-
wise from any destruction of property in carriage, and did not apply
to the matter of general average.

After the exceptions were overruled, answers were filed, and the
cause was submitted to the court upon an agreed statement of facts.

The only new question arising upon the hearing is whether the bills of lading under which this cargo was shipped, exempted the vessel from contribution in general average. The stipulations of the bill of lading, so far as they are material to be considered, are these: It was agreed that the transportation and forwarding of the goods for the consideration stated is subject to the conditions of the bills of lading, which contain a large number of stipulations. One was that the carrier should not be liable "for any loss or damage sustained by any person, or for any loss or damage to all or any of said property, arising from, caused by, or connected with any one or more of the following mentioned causes or things, to wit: Any peril, danger, or accident of or incident to navigation or transportation, receipt or delivery, storage or wharfage, any fire, collision, explosion of any kind, wetting, combustion, heating; nor shall there be any liability on the part of any carrier, vessel, or her master, for any loss or damage herein mentioned, unless the same shall affirmatively, and without presumption, be proven to have been caused by the negligence of the person, party, or vessel sought to be made liable." And a third provision is that, when the party or the vessel should be held liable, "the carrier or the person liable, who should so sustain loss in consequence of owning, chartering, or being interested in or as to said vessel, shall have any insurance, however effected, on, as to, or covering the property lost or damaged, and all the benefit and advantage to be derived therefrom."

There are three questions which arise upon this hearing: (1) Whether it is competent for a common carrier to exempt itself from liability as against general average contribution. (2) Whether the clause which gives to the carrier the benefit of any insurance upon the property precludes the insurers from maintaining an action to recover for such contribution. (3) Whether this bill of lading does in fact purport to exempt carriers from such liability.

The court entertains grave doubt whether common carriers should be permitted to exempt themselves from such liability. It is true the supreme court of the United States has sustained the right of common carriers to exempt themselves from their common-law liabilities not growing out of their own negligence; but this matter of general average rests upon very peculiar foundation, and can hardly be termed a common-law liability. The master is made the agent, in the law, of the vessel, of the cargo, of the parties owning the cargo and owning the vessel, and given the discretion in time of emergency to subject the one to loss for the preservation of the other. If in case of storm it becomes necessary, for the preservation of ship and cargo, to throw overboard part of the cargo, the law compels that which is saved to contribute for that which was lost; and, as I am inclined to think, it would be seriously against the public policy of the law of the sea to permit carriers to say that the ship shall be exempt while the cargo remains subject to contribution.

In the next place the court is of opinion that these bills of lading do not undertake to exempt the carrier from liability to general average. They exempt them from loss of damage by fire or wetting. It undertakes, in many words, to exempt the common carrier from

nearly all the common-law liabilities. And the court must consider the fact that these stipulations are all printed in very small type, so that it would require the shipper of cargo to make a very minute examination of the paper, before shipping, to ascertain just what liabilities were imposed upon the carrier, and what are exempted; and the court must also take into consideration the fact that generally bills of lading are delivered after the shipment of cargo, not before; and while upholding the right of the carrier to make his contract and exempt himself from common-law liabilities in large degree, yet these terms of limitation and restriction must be expressed clearly and decisively, that parties may know the terms of their contract.

"Jettison" and "general average" have been known for centuries in the law of the sea; been well understood by all engaged in traffic upon the sea. They are simple and expressive terms, and the court is not inclined, by any nice or dubious construction of an obscurely worded instrument, to exempt the carrier from responsibility for that which he ought equitably to bear, when, if he could legally exempt himself by contract, such exemption could have been expressed in well-understood phrase. The court cannot believe that it was designed by the parties to this contract that the carrier was to be relieved of that equitable claim of contribution for the saving of the ship. Had it been so designed, it would not have been expressed in such way that it must be arrived at only by very nice and subtle construction and distinction of words, when simple and well-understood expressions would have better answered the purpose.

With respect to the claim that this provision covers such a loss as the present, I am inclined to the opinion that it is ruled by the decisions which were referred to by the court upon the previous hearing of this case, where similar provisions in the statute were claimed to exempt the carrier from general average contribution. The courts in England ruled that the exemption of cargo from liability for injury occasioned by fire or wetting corresponded with the ordinary exemption from the accidents of navigation, and did not work exemption from liability to contribute towards general average. The language of the bills of lading is very similar to that employed in that act of congress and the English act, with the exception that here there is a provision that the carrier shall have the benefit of the insurance arising from the liability mentioned; but the court is not prepared to say that that clause is sufficient to give the carrier exemption from a liability which is imposed by law in the interest of the property of all concerned, where a loss has been occasioned by the sacrifice of a part of the property to save the whole. There will, therefore, be a decree for the libelants for the sum of $2,505.62, with interest from the filing of the libel.